**UNITED STATES of America**

v.

**John Anthony GENTILE, Harry Levine and Harry Stine, also known as Harry Stein.**

**Cr. No. 25314.**

United States District Court
D. Maryland.

Dec. 7, 1962.

# 384

Joseph D. Tydings, U. S. Atty., and Stephen H. Sachs, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

John P. Daley, Wilmington, Del., for defendant Gentile.

Alan H. Murrell and Solomon Liss, Baltimore, Md., for defendant Levine.

Solomon Liss, Baltimore, Md., and John W. Agnew, Indianapolis, Ind., for defendant Stine.

THOMSEN, Chief Judge.

Count 1 of the indictment in this case charges defendants Gentile and Levine with knowingly transporting and causing to be transported in interstate commerce from Baltimore, Maryland, to Glasgow, Delaware, for the purpose of sale and distribution, "articles of indecent and immoral character, to wit, two dozen articles of rubber goods of an immoral nature", in violation of 18 U.S.C. § 1465.[1]

Count 2 charges defendant Stine with knowingly using a specified common carrier for carriage in interstate commerce from Indianapolis, Indiana, to Baltimore, Maryland, of "five cartons containing articles of rubber goods of indecent character and designed and adapted for indecent and immoral use", in violation of 18 U.S.C. § 1462(a) and (c). Count 3 charges Levine with knowingly taking those goods from that carrier, knowing them to have been so transported, also in violation of 18 U.S.C. § 1462(a) and (c).[2]

Sec. 1462, as amended in 1950, and sec. 1465, as enacted in 1955, are set out in Note [3], below. They are part of Chap-

---

1. 18 U.S.C. § 2 is also cited at the foot of Count 1.

2. Count 4 charges Levine with corruptly endeavoring to influence a specified witness in this Court to give false testimony, in violation of 18 U.S.C. § 1503. For reasons heretofore stated orally at the conclusion of the trial, the Court finds Levine not guilty of the charge in Count 4.

3. § 1462. *Importation or transportation of obscene matters*

"Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly deposits with any express company or other common carrier, for carriage in interstate or foreign commerce—

"(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; or

"(b) any obscene, lewd, lascivious, or filthy phonograph recording, electrical transcription, or other article or thing capable of producing sound; or

"(c) any drug, medicine, article, or thing designed, adapted, or intended for preventing conception, or producing abortion, or for any indecent or immoral use; or any written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information directly or indirectly, where, how, or of whom, or by what means any of such mentioned articles, matters, or things may be obtained or made; or

"Whoever knowingly takes from such express company or other common carrier any matter or thing the depositing of which for carriage is herein made unlawful—

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

"§ 1465. *Transportation of obscene matters for sale or distribution*

"Whoever knowingly transports in interstate or foreign commerce for the purpose of sale or distribution any obscene, lewd, lascivious, or filthy book, pamphlet, picture, film, paper, letter, writing, print, silhouette, drawing, figure, image, cast, phonograph recording, electrical tran-

ter 71 of the Criminal Code, headed "Obscenity".

Able and experienced counsel for defendants do not dispute that by stipulation and evidence the Government has proved beyond a reasonable doubt all elements of the crimes charged in Counts 1, 2 and 3, except the alleged fact that the goods referred to are "of indecent or immoral character" or "designed, adapted, or intended for * * * any indecent or immoral use", within the meaning of those terms as used in the specified sections of the Criminal Code.[4] They have challenged such character, design and adaptation by motions for judgment of acquittal under Rule 29, F.R.Crim.P., and by argument on the facts.

The articles referred to in Count 1, which were transported by Gentile, consisted of two dozen thin rubber devices, known as "french ticklers", similar to ordinary contraceptives except that on the outside of each device small bits of rubber of various shapes are welded or attached. They were contained in two white envelopes on the outside of which was printed: "Sputnick—Have Fun—Party Novelty—Get a Laugh—Sold as a Novelty". The Government contends that these goods are of indecent character, within the meaning of sec. 1465.

The articles referred to in Counts 2 and 3, which were delivered to the common carrier by Stine and taken from the carrier by Levine, consisted of five cartons of rubber devices known as "extensions", made partly of thin rubber, like an ordinary contraceptive, but having large thick rubber ends, varying in design, most of which have small bits of rubber attached in various patterns. The color and shape of the articles are intended to suggest an erect male organ, exaggerated in size and somewhat grotesque in shape. In each carton were a number of printed cards bearing the legend: "Novelty Latex—$36.00 Per Doz. —A Amusing and Entertaining Party Novelty—Get a Laugh From Your Friends—Sold as a Novelty—Not to be Used". The Government contends that these goods are of indecent character, within the meaning of sec. 1462(a), and are also designed and adapted for indecent use within the meaning of sec. 1462 (c). The indictment does not charge that the goods are designed, adapted or intended to prevent conception.[5] It charges that the goods referred to in Counts 2 and 3 are designed and adapted for indecent use.

Webster's New International Dictionary (unabridged, 2d ed., 1956) defines "indecent" as follows:

"Not decent; specif.: a Unbecoming or unseemingly; indecorous * * *

scription or other article capable of producing sound or any other matter of indecent or immoral character, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

"The transportation as aforesaid of two or more copies of any publication or two or more of any article of the character described above, or a combined total of five such publications and articles, shall create a presumption that such publications or articles are intended for sale or distribution, but such presumption shall be rebuttable.

"When any person is convicted of a violation of this Act, the court in its judgment of conviction may, in addition to the penalty prescribed, order the confiscation and disposal of such items described herein which were found in the possession or under the immediate control of such person at the time of his arrest."

4. The arrest of Gentile and the search incident thereto were proper under United States v. Copes, D.Md., 191 F. Supp. 623, aff'd sub nom., Sawyer v. United States, 4 Cir., 297 F.2d 535. The search warrant under which Levine's store was searched was clearly justified by the affidavit upon which it was issued.

5. It seems clear under the authorities that in order to make out an offense under this paragraph the Government should be required to allege and prove that contraceptive devices are shipped and received with intent that they be used for *illegal* contraception or abortion or for indecent or immoral purposes. See Youngs Rubber Corp. v. C. I. Lee & Co. (2 Cir.), 45 F.2d 103, 107–108; Davis v. United States, 6 Cir., 62 F.2d 473, 475; United States v. Nicholas (2 Cir.), 97 F. 2d 510, 512.

"Syn.—Immodest, impure; gross, obscene."

See Note 4 to the opinion of Mr. Justice Harlan, who announced the judgment of the Court in Manual Enterprises v. Day, 370 U.S. 478, 82 S.Ct. 1432, 1434, 8 L.Ed. 2d 639.[6]

Counsel for both sides in the case at bar have accepted as applicable in this case the test of obscenity set out in that opinion and quoted below, with due regard to the fact that this case does not involve any rights under the First Amendment.

"'Material is obscene if, considered as a whole, its predominant appeal is to prurient interest * * * and if *in addition* it goes substantially beyond customary limits of candor in describing or representing such matters.' * * * (Emphasis added.)

"Obscenity under the federal statute thus requires proof of two distinct elements: (1) patent offensiveness; and (2) 'prurient interest' appeal. * * *." 370 U.S. at 486, 82 S.Ct. at 1436.

*Counts 2 and 3, Sec. 1462(c).*

■ Paragraph (c) of sec. 1462, set out in Note 3, above, prohibits transportation of "any drug, medicine, article, or thing designed, adapted, or intended for preventing conception, or producing abortion, or for any indecent or immoral use; * * *." The articles ("extensions") which are the basis of Counts 2 and 3, and which are described above, are designed and adapted for use in connection with sexual intercourse. I am convinced beyond a reasonable doubt that four of the five types shipped by Stine and taken by Levine, are designed and adapted for indecent and prurient use in stimulating desire for such intercourse,

that they go substantially beyond customary limits of decency, and that they are patently offensive. They come within the class of articles covered by paragraph (c) of sec. 1462.

*Counts 2 and 3, Sec. 1462(a).*

■ The items listed in paragraph (a) of sec. 1462 involve the communication of thoughts, emotions or suggestions. Whether the articles ("extensions") referred to in Counts 2 and 3 come within that paragraph depends upon (1) whether their predominant appeal is to the communication of a prurient thought, emotion or suggestion, if they are exhibited at a "party", as suggested by the accompanying cards, or otherwise exhibited by or to ordinary people, and (2) whether they are patently offensive. If they meet both tests they are "other matter of indecent character" within the meaning of sec. 1462(a). United States v. Alpers, 338 U.S. 680, 70 S.Ct. 352, 94 L.Ed. 457. Cf. United States v. Keller, 3 Cir., 259 F.2d 54. I find that four of the five types included in the shipment meet both tests, beyond a reasonable doubt.

The motions of Stine and Levine with respect to Counts 2 and 3 must be denied. They are guilty, Stine under Count 2 and Levine under Count 3.

*Count 1, Sec. 1465.*

■ The problem under Count 1 is more difficult. There is no reference to contraceptive articles in sec. 1465; the items listed therein are similar to the items listed in paragraphs (a) and (b) of sec. 1462, not to those in paragraph (c). All of the items listed in sec. 1465 involve some kind of communication. The question under Count 1, therefore, is whether the articles ("french ticklers") referred to therein and described above have as their predominant appeal the communication of prurient thoughts,

---

6. The definition of the word "obscene" is also included in that Note, as follows:
   "1. Offensive to taste; foul; loathsome; disgusting.
   * * * * *

"2. a Offensive to chastity of mind or to modesty; expressing or presenting to the mind or view something that delicacy, purity, and decency forbid to be exposed; lewd; indecent; as, *obscene* language, dances, images."

emotions or suggestions, and whether they are patently offensive. This is the same question we have considered in deciding whether the "extensions" which are the basis of the charge in Counts 2 and 3 come within sec. 1462(a) as well as sec. 1462(c). But the articles are different in design and predominant appeal. Despite the legend on the envelopes, I find that the "french ticklers" were designed primarily for use in satisfying desire rather than for stimulating desire by the communication of any thought, emotion, or suggestion. Their transportation, therefore, is not prohibited by sec. 1465, even though they may be contraceptive devices which are patently offensive, as to which I intimate no opinion. Gentile and Levine are not guilty as charged in Count 1.